**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: DELAWARE PRIME
CONTRACTORS, INCORPORATED, a/k/a
Prime Contractors, Incorporated,
Debtor.

DELAWARE PRIME CONTRACTORS,
INCORPORATED, a/k/a Prime
Contractors, Incorporated,
Plaintiff-Appellant,

and

ROLAND E. KINSER; JEAN A. KINSER,                   No. 96-1663
Plaintiffs,

v.

NATIONSBANK OF VIRGINIA, N.A.,
formerly known as Sovran Bank
NA, a National Banking
Association,
Defendant-Appellee,

v.

UNITED STATES TRUSTEE,
Party in Interest.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-96-183-AW, BK-91-4-0826-PM, AP-95-1-AO34-PM)

Argued: July 8, 1997

Decided: October 6, 1997

Before NIEMEYER, MICHAEL, and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mark Peyser Friedlander, Jr., FRIEDLANDER &
FRIEDLANDER, P.C., Arlington, Virginia, for Appellant. Philip C.
Baxa, MAYS & VALENTINE, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

When NationsBank of Virginia, N.A., began foreclosure proceed-
ings against a townhouse development in Prince George's County,
Maryland, known as Woods End, the developer of the project, Dela-
ware Prime Contractors, filed for Chapter 11 bankruptcy, staying the
foreclosure. Delaware Prime then instituted this adversary proceeding
against NationsBank, alleging that NationsBank breached duties of
good faith and fair dealing in the administration of the loans that
NationsBank had made to Delaware Prime for the project. The bank-
ruptcy court granted NationsBank's motion for summary judgment
and the district court affirmed. This appeal followed, and we now
affirm.

In March 1988, Delaware Prime Contractors and NationsBank
entered into three separate loan agreements, totaling nearly $5 mil-
lion, for land acquisition, development, and construction of Woods

End. The loan agreements provided, <u>inter alia</u>, that Delaware Prime would segregate the proceeds of each loan and use them only for the loan's specified purpose and would not allow any mechanics liens to be filed against the project.

By early 1990, Delaware Prime began to experience serious cash flow problems due in large part to a civil engineering error with regard to the grading of the site, and by May 1990, Delaware Prime was in default on its loans. It had improperly drawn funds under the construction loan to cover the development cost overruns; it had mis-reported its progress on the project and had reported a need for funds to complete the project that exceeded the remaining available funds on the initial loans; and it permitted unpaid subcontractors and materialmen to record mechanics liens against the property.

Although NationsBank could have instituted foreclosure proceedings at that time, it elected to lend an additional but final advance of $400,000 to Delaware Prime. In exchange, Delaware Prime agreed to allocate the sales proceeds of each townhouse, paying a portion to reduce loan principal and the remaining portion to NationsBank to be held in escrow to pay project expenses. Delaware Prime also pledged two adjacent properties as additional collateral. The terms for this additional advance were memorialized in a written modification to the deed of trust. The modification also provided that "[e]xcept as expressly provided herein, all other terms, obligations, conditions, and covenants of the Deed of Trust and Modifications shall remain in full force and effect."

Despite the additional loan amount, sales of townhouses continued to be slow in the summer and fall of 1990, and Delaware Prime had insufficient funds to pay its subcontractors and materialmen who again began to file mechanics liens against the property. By November 1990, Delaware Prime ceased work on the project, and in January 1991 NationsBank instituted foreclosure. Delaware Prime then obtained a stay by filing for bankruptcy.

In this adversary proceeding, Delaware Prime alleged that NationsBank breached its duty of good faith and fair dealing in the administration of the loans during and after June 1990. Specifically, it contended that NationsBank manipulated valuations to justify its demand

3

for extra collateral for the June 1990 modification and that Nations-Bank exacerbated the cash flow crisis by an intentionally slow release of escrow funds. Delaware Prime argued further that the June 1990 agreement constituted a novation of the prior contract that absolved it of its prior defaults. Finally, Delaware Prime claimed that, based on oral contract modifications, NationsBank obtained a right of first refusal on end-loan applications by townhouse purchasers and misused that right by rejecting the applications, most of which were submitted by African-Americans.

Following NationsBank's motion for summary judgment, the bankruptcy court allowed Delaware Prime discovery, but it denied Delaware Prime's request to see NationsBank's loan valuation manuals. After a full hearing, the court granted NationsBank's motion for summary judgment, finding that Delaware Prime had failed to produce any material evidence to support its allegations and noting, additionally, that Delaware Prime was barred from asserting its claim because it had failed to list the claim as an asset in the bankruptcy estate. Even after Delaware Prime amended its bankruptcy schedules to reflect the existence of the claim, the Bankruptcy Court denied reconsideration, and the district court affirmed. On appeal, Delaware Prime challenges the district court's ruling on the merits, its refusal to allow discovery of the loan valuation manuals, and its refusal to reconsider its rulings.

We have carefully reviewed the record in this case and have considered the arguments of counsel. For the reasons cogently stated by the district court in its opinion, we affirm. See Prime Contractors, Inc. v. NationsBank of Virginia, N.A. (In re Delaware Prime Contractors, Inc.), Civil No. AW-96-183 (D. Md. April 9, 1996).

AFFIRMED

4